MR. JUSTICE SHEEHY,
concurring:
I agree most emphatically with the foregoing opinion. It is near an absolute that in this country and in this state a judicial system would condemn the admission of evidence secured by trespassers who here used methods usually employed by burglars to gain entrance into defendant’s private domain.
We were told in oral argument by the State that a decision favoring the defendant in this case would dampen the efforts of “Crimestoppers,” a program designed to utilize informers in crime detection. I particularly reject that contention. The “Crimestoppers” effort is having laudable effect. Experience in the program shows that a good deal of the information developed comes from co-conspirators or co-criminals who for their own purposes or rewards turn to the law officers. The program certainly does not depend on private trespassers. Part of the funds given to support “Crimestoppers” comes from donations from the public. That public support would soon evaporate if indeed the result of the program was to turn our neighbors into vigilantes riding into our yards, garages, vaults and homes in search of tangible evidence of illegal activity. If, as the State argues, “Crimestoppers” depends upon invasion by private trespassers for its ultimate success (I do not believe so), then the program must face the same problem facing the unlawfully-acting constable: as the case develops the quarry may slip away. There are more ways than one to bag a cat. Why use a bag with a large hole at the other end?
The State concedes that if the evidence in this case had been produced by the same kinds of actions of police officers, no appellate court including the United States Supreme Court would condone admitting such evidence against the accused. The State was not asked, but it would also have to concede, that if the record here showed the police officers had colluded with the private trespassers to *533 produce the evidence it would not be admissible. So this case really comes down to this: the State is asking us to reinstate for State purposes the “silver platter” arrangement condemned in Elkins v. United States (1960), 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669.
Another argument raised by the State is that a criminal trial is a “search for truth” and therefore courts should accept all evidence, notwithstanding taint, except for the weightiest policy considerations requiring exclusion. It is not new that assertions of high moral purpose have been posted as reasons for abusing persons or rights. Robin Hood stole from the rich to give to the poor — but he, the original Hood, was stealing. Brutus was concerned that Julius Caeser might make himself a king — and so he stabbed his friend. Adolph Hitler convinced a race that their superior blood should be kept pure — and they joined in the Holocaust. These are extreme examples but they serve. The end does not always justify the means.
Another argument made by the State is that the police in this case are guilty of no wrongdoing. It was the private trespassers that acted illegally. Again the argument is not new. Adam tried to blame Eve when he was caught with the fruits of an illegal seizure. By accepting the fruits of the illegality the police have stripped themselves from any insulation from its illegality under our view of the law that they stand in the foot pads of the trespassers.
Finally, a word about the posture of this case on appeal. The defendant comes to us as an appellant, despite the earlier rulings of this Court clearly on his side. In other words, the prosecution and the District Court had chosen not to follow our clear direction on the state of the law in Montana on this matter. This may not be the case, but one day soon, it can be predicted, an innocent person will be falsely accused by a trespasser and the State will prosecute, and the county and state will be open to possible liability for wrongful prosecution. Sometimes it is smarter to follow the law even if one disagrees with it.